FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION

2012 AUG -6 PM 4: 41

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF INDIANA

LAURA A. BRIGGS

| | |
|---|---|
| Malibu Media, LLC, | Civil Action No. 1:12-cv-00841-SEB-DKL |
| Plaintiff, | |
| vs. | MOTION TO QUASH OR MODIFY SUBPOENA |
| John Does 1-23, | |
| Defendants. | |

_____/

## MOTION TO QUASH OR MODIFY SUBPOENA

I, one of John Does 1-23, (hereinafter "Doe" or "Defendant") respectfully move the court for dismissal or severance of my case in the above captioned matter and motion to quash the subpoena served on my Internet Service Provider, Comcast Corporation.

I understand that *pro se* litigants are required to follow the same rules and procedures as litigants that are represented by attorneys as seen in Nielson v. Price, 17 F.3d 1276, 1277 (10th Cir. 1994). I also understand that anonymous representation is not favored in this Court, but I must remain anonymous to protect my reputation and identity. I have reviewed the Honorable Michael E. Hegarty's practice standards and I have incorporated such standards into this motion to the best of my ability. A copy of this motion will be provided to the Court, my Internet service Provider, and the Plaintiff's counsel.

1

I have never committed the acts alleged by the plaintiffs. After receiving a letter from Comcast Corporation advising me that it had been subpoenaed to release my identity and contact information in this matter, I began to research Malibu Media, LLC and similar cases brought by others. Research has revealed that in cases associated with Malibu Media, LLC, when the subpoenaed information is turned over to the plaintiffs, the defendants, guilty or innocent, receive demand letters. These letters typically demand from $2500 to $7500 and in some cases in excess of $13000 for settlement to avoid dealing with threatened lawsuits, and the subsequent telephone calls, which have been reported as persistent if not harassing, are the reason I am filing this motion. I respectfully request that I be allowed to make this motion anonymously without revealing my personally identifying information as to do otherwise would defeat the purpose of this motion.

The case against John does 1-23 is a strategic campaign by Plaintiff to coerce innocent people to settle out of court for exorbitant amounts to avoid embarrassment due to the association with Plaintiff's products (i.e. pornography). This tactic imposes an unfair cost and burden on numerous innocent defendants, a fact plaintiff uses to its advantage, to obtain unscrupulous settlements. The Plaintiff in this case has instituted a lucrative procedure at the taxpayers' expense where it initiates legal proceedings based on questionable allegations, against anonymous defendants, in hopes of extracting quick settlements. Similar plaintiffs have filed thousands of similar "John Doe suits" across the country. See, e.g., Patrick Collins Inc., K-Beech Inc, Raw Films Ltd., Diabolic Video Productions Inc., et al, v. Does 1-1,544 in the 11th Judicial Circuit for Miami-Dade

County, Florida, Case No. 11-24714 CA 22. Further, the Honorable Judge Beeler of the U.S. District Court for the Northern District of California stated in a case similar to the one at issue, that

"plaintiffs in these cases appear content to force settlements without incurring any of the burdens involved in providing their cases" and that Plaintiffs "" have been abusing the court system in order to facilitate their cheme." See, Order to Dismiss Comp., Patrick Collins, Inc. v. Does 1-1,129. Case 4:10-CV-00468-LB (D. Cal. Aug. 29, 2011).

Defendant bases this motion on four factors: (1) improper joinder, (2) the person using a device connected to the internet at any given time is not necessarily the individual to whom the involved Internet Protocol address (IP address) is registered, (3) even the Media Access Control (MAC) address will often indicate on the wireless router connected to the internet but cannot be relied upon to determine who accessed the internet at any particular time, and (4) the inability to identify who actually accessed the internet through given IP and MAC addresses introduces an unacceptable degree of uncertainty with regard to the identification of actual wrongdoers.

Thereafter, Defendant files this Motion and requests that this Court follow courts through the nation by halting frivolous lawsuits such as the instant case. The Defendant asks this Court to (1) dismiss the action against the Defendant and (2) quash the subpoena seeking the personal information of the Defendant, or in the alternative, grant a protective order preventing the disclosure of any information obtained through a subpoena.

1. **Improper Joinder**

To minimize court costs while suing or threatening to sue as many individuals as possible is using improper joinders as has been typical in Malibu Media, LLC suits alleging copyright infringement through BitTorrent. Information retrieved from Justia Dockets and Filings (http://dockets.justia.com/) indicates Plaintiff Paul J. Nicoletti on behalf of Malibu Media, LLC filed 4 lawsuits in the Indiana Southern District Court on June 8, 2012 involving 67 defendants and have been assigned to 3 different judges in the same district Court. The individual lawsuits have from 6 to 29 defendants each, averaging 17. Thus far in 2012, Malibu Media LLC has filed more than 250 suits in California, Colorado, the District of Columbia, Florida, Indiana, Maryland, New York, Pennsylvania, Texas and Virginia against numbered Does using similar tactics. These suits collectively name more than 3000 defendants, averaging almost 16 per case.

Federal courts have previously recognized this improperness of joinder. In a case that is identical to this one, on April 3, 2012, Judge Thomas R. Jones, Magistrate Judge, Eastern District of Virginia, recommended that similar Malibu Media X-Art Site-Rip cases have all but Doe #1 severed, due to the lack of information that all the Does took part in the same "swarm" for the entire period in question. In fact, due to the nature of BitTorrent and that peers are located in other part of the U.S. (to include other Malibu Media X-Art filings) and the world, these CO IP addresses are more likely to have shared with peers not associated to this CO case. See *Cases 1:12cv159 (CMH/TRJ), 1:12cv160 (CMH/TRJ) 1:12cv161 (CMH/TRJ) 1:12cv162 (CMH/TRJ), 1:12cv163*

*(CMH/TRJ), 1:12cv164 (CMH/TRJ), 1:12cv165 (CMH/TRJ), 1:12cv166 (CMH/TRJ), 1:12cv167 (CMH/TRJ)*

> ... Where, as here, a plaintiff seeks to join several defendants in an action based on filesharing activity, the magistrate judge finds that a plaintiff must allege facts that permit the court at least to infer some actual, concerted exchange of data between those defendants. In these cases, as in K-Beech and Hard Drive Productions, the spans of time shown in plaintiffs' investigations make it difficult to draw the conclusion that there has been any actual exchange of data between and among the defendants in each case.

In a BitTorrent similar to this one, *CP Productions, Inc. v. Does 1-300 Case 1:201 Ocv06255*, the court noted before dismissal:

> [I]f the 300 unnamed defendants have in fact infringed any copyrights (something that this court will assume to be the case, given the Complaint's allegations that so state), each of those infringements was separate and apart from the others. No predicate has been shown for thus combining 300 separate actions on the cheap - if CP had sued the 300 claimed infringers separately for their discrete infringements, the filing fees alone would have aggregated $105,000 rather than $350.

In the same vein, in the Southern District of New York, Judge Colleen McMahon wrote when dismissing all but one of the defendants (John Doe #1) in *Digital Sins, Inc. vs. John Does 1-245 Case 1:11-cv-08170-CM*, "They are dismissed because the plaintiff

has not paid the filing fee that is statutorily required to bring these 244 separate lawsuits." In that case the under payment exceeded $85,000.00.

Commenting on the same case, Judge Milton Shadur wrote:

This Court has received still another motion by a "Doe" defendant to quash a subpoena in this ill-considered lawsuit filed by CP Productions, Inc. ("CP") against no fewer than 300 unidentified "Doe" defendants - this one seeking the nullification of a February 11,2011 subpoena issued to Comcast Communications, LLC. This Court's February 24, 2011 memorandum opinion and order has already sounded the death knell for this action, which has abused the litigation system in more than one way. But because the aggrieved Doe defendants continue to come out of the woodwork with motions to quash, indicating an unawareness of this Court's dismissal of this action, 1 CP's counsel is ordered to appear in court on March 9, 2011 at 9:00 a.m. Counsel will be expected to discuss what steps should be taken to apprise all of the targeted "Doe" defendants that they will not be subject to any further trouble or expense as a result of this ill-fated (as well as ill-considered) lawsuit.

In *VPR Internationale vs. Does 1-1017 case 2:2011cv02068)*, Judge Harold A. Baker wrote in denying a motion for expedited discovery:

Plainly stated, the court is concerned that the expedited ex parte discovery is a fishing expedition by means of a perversion of the purpose of and intent of Fed. R. Civ. P. 23.

In the Northern District of California, these nearly identical BitTorrent cases have been severed for improper joinder:

*Pacific Century International LTD v. Does 1-101 case 4:20J1cv02533 (severed does 2-101)*

*10 Group, Inc. v. Does 1-435 case 3:2010cv04382 (severed does 2-435)*

*Diabolic Video Productions, Inc v. Does 1-2099 case 5:2010cv05865 (severed Does 2-2099)*

*New Sensations, Inc v. Does 1-1768 case 5:2010cv05864 (severed Does 2-1768)*

In yet another nearly identical BitTorrent case, filed in the Northern District of California, *Millennium TGA, Inc v. Does 1-21 case 3:2011cv02258*, Judge Samuel Conti found the same joinder problems, and wrote in his order denying request for leave to take early discovery, "This Court does not issue fishing licenses;" Two other BitTorrent cases in the Northern District of California by the same plaintiff, Boy Racer, have also been severed for improper joinder:

*Boy Racer, Inc v. Does 1-52 case 5:2011cv02329 (severed Does 2-52)*

*Boy Racer, Inc v. Does 1-71 case 5:2011cv01958 (severed Does 2-72)*

In *Case 1:12-cv-00163-CMH-TRJ, Document 10,* United States Magistrate Judge Thomas Rawles Jones, Jr. of the United States District Court for the Eastern District of Virginia consolidated nine cases, eight in which Malibu Media, LLC was the plaintiff

7

and recommended that "all but the first Doe defendant in each of these matters be severed, and that the plaintiffs then be permitted to serve discovery on these remaining defendants' internet service providers to learn their identities."[ pps.3-4] In the same document, the Judge cites precedence from two earlier cases arguing against joinder (p. 7, ibid): that "the allegation that defendants used the same protocol on different days and times was insufficient" and that "the span of time covering the activity made the argument for joinder "unpersuasive." The same logic applies to the present case. The complaint shows that the alleged infringements took place on April 1,2012 (Doe #15), April 13,2012 (Doe #6), April 13,2012 (Doe #19), April 14,2012 (Doe #20), April 18,2012 (Doe #18), April 21, 2012 (Doe #16), April 23,2012 (Doe #10), April 23,2012 (Doe #17), April 23,2012 (Doe #23), April 27,2012 (Doe #13), April 30, 2012 (Doe #11),May 03,2012 (Doe #3), May 04 2012 (Doe #2), May 4,2012 (Doe #14), May 8,2012 (Doe #9), May 9, 2012 (Doe #7), May 9, 2012 (Doe #12), May 10,2012 (Doe #4), May 18,2012 (Doe #8), May 19,2012 (Doe #22), May 21, 2012 (Doe #1), May 22, 2012 (Doe #5) and May 23,2012 (Doe #21). Note that the dates span almost two months.

Plaintiff may argue that its allegations here are based upon use of the Internet to infringe a single work. While that accurately describes the facts alleged in this case, it does not change the legal analysis. Whether the alleged infringement concerns a single copyrighted work or many, it was committed by unrelated defendants, at different times and locations, sometimes using different services, and subject to different defenses. That attenuated relationship is not sufficient for joinder. See *BMG Music v. Does 1-203, 2004 WL 953888* at *1.

Defendants have no knowledge of each other, nor do they control how the protocol works, and Plaintiff has made no allegation that any copy of the work they downloaded came jointly from any of the Doe defendants. Joining unrelated defendants in one lawsuit may make litigation less expensive for Plaintiff by enabling it to avoid the separate filing fees required for individual cases and by enabling its counsel to avoid travel, but that does not mean these well-established joinder principles need not be followed here.

The actual reason the plaintiff has joined 23 defendants in a single suit is not due to the alleged concerted tortuous conduct, but instead to circumvent the individual $350.00 filing fee. If this case was filed properly against the 23 defendants, the required fee would be $8,050. By pursuing this approach, the plaintiff can feasibly attack a large number of defendants.

Because this improper joining of these Doe defendants into this one lawsuit raises serious questions of individual fairness and individual justice, the Court should sever the defendants and "drop" Does 1-23, from the case.

See Fed. R. Civ. P. 21.

2. **The person using a device connected to the internet at any given time is not necessarily the individual to whom an implicated Internet Protocol IP address) is registered**

There are many circumstances in which the person to whom an Internet Protocol address may be registered is not the only person able to access the internet through that address. These are discussed at length in a Declaration (*Case 2:12-cv-02084-MMB Document 9*). A copy of this Declaration is attached.

The fact that the person to whom an IP address is registered may not be the only individual who can access the internet through that address and the implications of this has been recognized previously by the courts. In *Case 2:II-cv-03995*, the Honorable Gary Brown noted that "it is no more likely that the subscriber to an IP address carried out a particular computer function-here the purported illegal downloading of a single pornographic film-than to say an individual who pays the telephone bill made a specific telephone call" [p. 6]

3. **Even a valid Media Access Control (MAC) address will often indicate only the wireless router connected to the internet and cannot be relied upon to determine who accessed the internet at any particular time.**

The identity of devices connected to the internet through an IP address is often limited to the first in a chain of devices. With the advent of the wireless router, often this will be the only device that can be identified. However, ownership of a wireless router, even a secured one, is not tantamount to being the only possible user of the device. Therefore, even the MAC address logged by the Internet Service Provider is of limited and possibly no value in determining who accessed the internet at a given moment or even what computer or other device was used to do so. This is discussed in more detail in

10

the Declaration referenced in (2) above. This has explicitly been recognized in the courts by Judge Gary R. Brown who wrote in RE: BITTORRENT ADULT FILM COPYRIGHT INFRINGEMENT CASES (*Case 2 -11-cv-03995-DRH-GRB Document 39*) that:

> unless the wireless router has been appropriately secured (and in some cases even if it has been secured), neighbors or passersby could access the Internet using the IP address assigned to a particular subscriber and download the plaintiff's film. As one court noted:
>
> > In order to allow multiple computers to access the internet under the same IP address, the cable modem may be connect to a router, or may itself function as a router, which serves as a gateway through which multiple computers could access the internet at the same time under the same IP address. The router could be a wireless device in which case, computers located within 300 feet of the wireless router signal could access the internet through the router and modem under the same IP address. The wireless router strength could be increased beyond 600 feet if additional devices are added. The only way to prevent sharing of the wireless router is to encrypt the signal and even then an individual can bypass the security using publicly available software. [p. 7, citations absent in the original]

4. **The inability to identify who actually accessed the internet through implicated IP and MAC addresses introduces an unacceptable degree or uncertainty with regard to the identification or actual wrongdoers.**

If, as may often be the case, it is not possible to identify the device used to access the internet, much less the person operating the device, simply classifying all persons to whom implicated IP addresses are registered as offenders creates a significant possibility, even probability if repeated often enough, that a number of persons who have done no wrong will be served and possibly elect to settle claims out of court as an expedient. For some this may be a simple business decision: it will cost less to settle than to litigate; for others who lack the financial resources to mount an adequate defense, the "choice" is forced upon them. This creates the potential for a coercive and unjust settlement and this has also been recognized by the courts in various jurisdictions. The Honorable Gary R. Brown writing *on Case 2:11-cv-03995* (document 39) when evaluating the potential for coerced settlements noted that:

> Many courts evaluating similar cases have shared this concern. See, e.g., *Pacific Century Int'l, Ltd v. Does 1-37*-F. Supp. 2d--, 2012 WL 26349, at *3 (N.D. Ill. Mar. 30,2012) ("the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies settle"); Digital Sin, 2012 WL 263491, at 3 * ("This concern and its potential impact on social and economic relationships, could impel a defendant entirely innocent of the alleged conduct to enter into an extortionate settlement") *SBO Pictures*, 2011 WL 6002620, at *3 (defendants, whether guilty of copyright infringement or not would then have to decide whether to pay money to retain legal assistance that he or she illegally downloaded sexually explicit materials, or pay the money demanded. This creates great potential for a coercive and unjust 'settlement'"). [p. 18]

The Honorable Harold A. Baker noted when commenting on *VPR Internationale v. DOES 1-1017 (2:11-cv-02068-HAB-DGB # 15)*, that:

> Orin Kerr, a professor at George Washington University Law School, noted that whether you're guilty or not, "you look like a suspect."3 Could expedited discovery be used to wrest quick settlements, even from people who have done nothing wrong? The embarrassment of public exposure might be too great, the legal system too daunting and expensive, for some to ask whether VPR has competent evidence to prove its case. In its order denying the motion for expedited discovery, the court noted that until at least one person is served, the court lacks personal jurisdiction over anyone. The court has no jurisdiction over any of the Does at this time; the imprimatur of this court will not be used to advance a "fishing expedition by means of a perversion of the purpose and intent" of class actions. Order, d/e 9. [p. 3]

Magistrate Judge Harold R. Loyd writing in regard to "*Hard Drive Productions v. Does I-90, C11-03825 HRL* stated:

> Here, plaintiff has failed to allege that its claims against the 90 Doe defendants arise from "a single transaction or a series of closely related transactions." Instead, plaintiff provides a list of all 90 Doe defendants, identified by IP addresses, and the date and time they each appeared in the swarm over a period of 63 days. See Complaint, Exh. A. Plaintiff also alleges that each Doe defendant "entered the same exact BitTorrent swarm and "reproduced and distributed the Video to multiple third parties." Complaint ¶29. But, plaintiff's counsel admitted at the hearing **that**

**plaintiff could not truthfully allege that any of the Doe defendants actually transferred pieces of the copyrighted work to or from one another.** [p. 10, emphasis added]

In *Case 2:11-cv-03995* which addressed three cases (*Malibu Media, LLC v. John Does 1-26, CV 12-1147 (JS)) (GRB). lvlalibu Media, LLC v. John Does 1-11, CV 12-1150 (LDW) (GRB), and Patrick Collins, Inc. v. John Does 1-9, CV 12-1154 (ADS) (GRB))* U.S. Magistrate Judge, the Honorable Gary Brown in discussing these issues noted that:

… These developments cast doubt on plaintiff's assertions that "[t]he ISP to which each Defendant subscribes can correlate the Defendant's IP address to the Defendant's true identity." See, e.g., Alalibu 26, CompL At ¶9, or that subscribers to the IP addresses listed were actually the individuals who carried out the complained of acts. As one judge observed:

The Court is concerned about the possibility that many of the names and addresses produced in response to Plaintiff's discovery request will not in fact be those of the individuals who downloaded "My Little Panties # 2." The risk is not purely speculative; Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material. Counsel stated that the true offender is often "the "teenaged son ... or the boyfriend if it's a lady." Alternatively, the perpetrator might turn out to be a neighbor in an apartment building that uses shared IP addresses or a dormitory that uses shared

14

hundreds of doe defendants through pre-service discovery and facilitate mass settlement, is not what the joinder rules were established for." Patrick Collins, Inc. v. Does 1-3757, 2011 U.S. Dist. LEXIS 128029, at *6-7 (N.D.Cal. Nov. 4, 2011).

From this matter the Court should quash the subpoena for identifying and contact information served on Comcast Corporation for John Does 1-23.

Dated: 8/4/2012                                Respectfully submitted,

*John Doe*

*s/John Doe*

John Doe

*Pro se*

*Email :* john987doe65@yahoo.com

wireless networks. The risk of false positives gives rise to the potential for coercing unjust settlements from innocent defendants such as individuals who want to avoid the embarrassment of having their names publicly associated with allegations of illegally downloading "My Little Panties # 2" [pps. 7 - 8, citations omitted in the original, emphasis original].

Judge Brown also observed that another judge had previously noted [citations omitted in the original]:

the ISP subscriber to whom a certain IP address was assigned may not be the same person who used the Internet connection for illicit purposes... By defining Doe Defendants as ISP subscribers who were assigned certain IP addresses, instead of the actual Internet users who allegedly engaged in infringing activity, Plaintiff's sought-after discovery has the potential to draw numerous internet users into the litigation, placing a burden upon them that weighs against allowing the discovery as designed. [ibid, p. 8]

Finally, also writing in *Case 2:11-cv-03995*, Judge Brown described the litigation practices in cases where pre-service discovery is the basis for identifying putative defendants as "abusive" and went on to state:

Our federal court system provides litigants with some of the finest tools available to assist in resolving disputes; the courts should not, however, permit those tools to be used as a bludgeon. As one court advised Patrick Collins Inc. in an earlier case, "while the courts favor settlements, filing one mass action in order to identify

15

## CERTIFICATE OF SERVICE

I hereby certify that on 8/4/2012, I served a copy of the foregoing document, via US Mail, on:

Paul J. Nicoletti

NICOLETTI & ASSOCIATES, PLLC

36880 Woodward Avenue, Suite 100

Bloomfield Hills, MI 48304