UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:12-cv-00841-SEB-MJD |
| v. | ) | |
| | ) | |
| TOBY REEVES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF
MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT
AGAINST DEFENDANT GIANCARLO DI MIZIO, JR.**

Defendant Giancarlo Di Mizio, Jr. ("Mr. Di Mizio"), by counsel, pursuant to Rule 55(c) of the Federal Rules of Civil Procedure, has moved the Court to set aside the Clerk's Entry of Default dated January 7, 2013 (Docket no. 65) (the "Entry of Default") as it pertains to Mr. Di Mizio, and to permit him to respond to the Complaint, as amended, of Plaintiff Malibu Media, LLC.

As discussed below, the Entry of Default against Mr. Di Mizio should be set aside because (1) "good cause" exists for the default, (2) Mr. Di Mizio took quick action to correct it, and (3) Mr. Di Mizio has a meritorious defense to Plaintiff's amended Complaint and its allegations of copyright infringement.

**I.   Procedural History and Background**

1.  On June 18, 2012, Plaintiff filed its original Complaint against John Does 1 through 23, initiating this action. (Docket no. 1).

2.  On June 23, 2012, Plaintiff moved for leave to serve third-party subpoenas on Internet Service Providers (ISPs), seeking the identities of service subscribers having

Internet Protocol (IP) addresses Plaintiff believed were associated with unauthorized downloading of its copyrighted material. (Docket no. 4). The Court granted leave for Plaintiff to serve such subpoenas on July 10, 2012. (Docket no. 6).

3. On information and belief, sometime thereafter, in response to Plaintiff's subpoena, Mr. Di Mizio's ISP, Comcast, disclosed to Plaintiff Mr. Di Mizio's name and address as the subscriber having an IP address Plaintiff alleged was associated with infringement of its copyrighted material.

4. At this time, Mr. Di Mizio was not aware that Plaintiff had initiated this action or had obtained his name and address from Comcast. Mr. Di Mizio does not recall having received any correspondence from Comcast informing him of Malibu Media's subpoena or Comcast's intended response to it. (Declaration of Giancarlo Di Mizio, Jr., dated January 25, 2013 ("Di Mizio Decl."), ¶¶ 7, 8 & 10, a true and correct copy of which is attached as Exhibit A to this Memorandum and made a part hereof).

5. If such a letter had been sent to Mr. Di Mizio, he likely mistook that correspondence as nothing more than promotional "junk mail" material of the kind he frequently received from Comcast, and he disposed of it unopened and unread. (Di Mizio Decl., ¶¶ 6-7).

6. Mr. Di Mizio first became aware of this action in or about September 2012 as a result of a telephone call from a person identifying himself as a representative of Malibu Media named Bill Higgins. (Di Mizio Decl., ¶¶ 9-10).

7. In Mr. Higgins' initial telephone call to him, Mr. Di Mizio was informed that his computer IP address had been implicated in the unauthorized downloading of copyrighted movies of Malibu Media, and that Malibu Media had identified Mr. Di Mizio

as one of the several "John Doe" defendants in this lawsuit. (Di Mizio Decl., ¶ 9). In addition to asking Mr. Di Mizio questions about his use of BitTorrent to download content on his computer, Mr. Higgins accused Mr. Di Mizio of not only downloading the movies alleged in the lawsuit, but of continuing to engage in infringing downloads of copyrighted Malibu Media material. (Di Mizio Decl., ¶ 10).

8. Because Mr. Di Mizio had never downloaded any Malibu Media movies from the Internet, after this first telephone call, Mr. Di Mizio undertook his own online investigation of Malibu Media and the lawsuit that Mr. Higgins had reference and identified to Mr. Di Mizio by case number. (Di Mizio Decl., ¶¶ 9, 11).

9. From his investigation, Mr. Di Mizio learned that Malibu Media had filed numerous lawsuits throughout the country alleging infringement of its copyrights in various pornographic movies. On the basis of postings by seemingly well-informed "bloggers" and other information he found online regarding Malibu Media and the tactics it employed in these cases, as well as various legal defenses that could be raised to counter these infringement claims, Mr. Di Mizio concluded that these lawsuits were "little more than a 'shake down'" by Malibu for the purpose of obtaining large sums in settlement with defendants, without having to prove its claims at trial. (Di Mizio Decl., ¶ 12).

10. While continuing his online investigation of Malibu Media and these lawsuits, Mr. Di Mizio contacted three attorneys in an effort to determine what, if anything, he should do in regard to the lawsuit in which he was supposedly involved. (Di Mizio Decl., ¶ 14).

3

11. On the basis of his investigation and these discussions with attorneys, Mr. Di Mizio understood at this time (whether or not correctly) that (a) the case in which he was supposedly involved would likely never go to trial, and could very well be dismissed by the judge on account of Malibu's improper joinder of unrelated defendants in a single case; (b) because he had not been sued by name, individually, in a separate lawsuit by Malibu, there was nothing he had to do at that time in defense of this action; and (c) whatever happened in the case, he did not want to be "defaulted." (Di Mizio Decl., ¶ 14).

12. Because no immediate action was required from him to defend against this action, and because Mr. Di Mizio was not in a financial position to retain the services of an attorney, Mr. Di Mizio did not at this time hire an attorney to further advise or represent him in this action. (Di Mizio Decl., ¶ 15).

13. Although he had received no correspondence from Malibu or the Court regarding his supposed involvement in this action, Mr. Di Mizio attempted to continue to follow developments in this and other Malibu cases on his own, monitoring "blogs" and other online resources. (Di Mizio Decl., ¶ 16).

14. In September 26 and 27, 2012, Plaintiff filed Amended Complaints with the Court identifying, for the first time, Mr. Di Mizio by name as a defendant in this action. (Docket nos. 24 & 28).

15. On October 30, 2012, the Court issued summonses to several named defendants in this action, including Mr. Di Mizio (Docket no. 41).

16. On November 2, 2012, Mr. Di Mizio received a delivery at his home of a summons with a copy of Plaintiff's Complaint, as then amended. (Di Mizio Decl., ¶ 18).

17. At the time Mr. Di Mizio received these documents, he did not realize that he was required to take any other action to preserve his right to defend against Plaintiff's claims. Mr. Di Mizio continued to believe, albeit mistakenly, that Malibu Media's suit was likely to be dismissed by the judge on account of improper joinder of multiple, unrelated defendants in a single case; and that he did not need to do anything until such time as he was individually named as the defendant in a separate lawsuit. (Di Mizio Decl., ¶ 20).

18. Although Mr. Di Mizio looked through these documents when he received them and saw that the summons referred to filing an answer or motion of some kind "within 21 days after service," he understood that to mean (incorrectly) that he need to respond within that time period only if he chose to challenge Malibu's claims at that stage of the case; but he continued to believe (again, incorrectly) that this would not be his final opportunity to defend himself in this action, in the event the judge permitted the case to proceed. (Di Mizio Decl., ¶¶ 20-21).

19. Because Mr. Di Mizio was not in a position financially to hire an attorney, he determined that his best course of action was to wait and see if the case would go forward or be dismissed; and that he would hire an attorney to represent him in the case only if he were required or order to do so by the judge. (Di Mizio Decl., ¶ 22).

20. On January 4, 2013, Plaintiff filed a Return of Service with respect to Mr. Di Mizio and a Motion for Entry of Clerk's Default Pursuant to Fed.R.Civ.P. 55(a). (Docket nos. 59 & 64).

21. On January 7, 2013, the Clerk's Entry of Default was entered in this action with respect to Mr. Di Mizio and several other named defendants. (Docket no. 65).

22.     Since being served on November 2, 2013, however, Mr. Di Mizio had received no further correspondence or communications regarding this action until he received by mail, on January 8, 2013, a copy of the Clerk's Entry of Default. In particular, Mr. Di Mizio had not received a service copy of Plaintiff's Motion for Entry of Clerk's Default, even though Malibu's attorney signed (but did not date) a Certificate of Service stating that he mailed a copy of the Motion to Mr. Di Mizio at his home address. (Di Mizio Decl., ¶ 23).

23.     Until January 8, 2013, when he received a copy of the Clerk's Entry of Default, Mr. Di Mizio had no knowledge that Plaintiff was seeking a default against him. (Di Mizio Decl., ¶ 23).  Upon receiving the Entry of Default, Mr. Di Mizio immediately called the Court to inquire about the significance of this "default."  Speaking with a clerk, Mr. Di Mizio was told that, as defaulted defendant in this case, he would not be permitted to answer the Amended Complaint or later dispute Plaintiff's allegations of infringement. He was also told that it might be possible to set aside the entry of default, provided he acted promptly. (*Id.,* at ¶ 25).

24.     Mr. Di Mizio immediately began contacting lawyers in Indianapolis and elsewhere who could advise him and, if possible, "undo" the default.  Of those he initially contacted, Mr. Di Mazio was told either they could not represent him or were not then admitted to appear for him before this Court, or he found that he could not afford to retain their services. (Di Mizio Decl., ¶¶ 26-27).

25.     On January 14, 2013, Mr. Di Mizio met with his present counsel to discuss this case and engaged his services to represent him in this action.

6

## II. Default Procedure and Applicable Legal Standards

### A. Default is a Two-Stage Process

The Seventh Circuit and this Court have recognized that, procedurally, default is a two stage process, involving, first, the establishment of the default, and, second, the actual entry of a default judgment. *In re Catt,* 368 F.3d 789, 793 (7th Cir. 2004); *McCarthy v. Fuller,* 2009 WL 3617740 at *1 (S.D. Ind. Oct. 29, 2009).

When a party is shown to have failed to plead or otherwise defend against that claim, Rule 55(a) of the Federal Rules of Civil Procedure directs the clerk of the court to "enter the party's default." Fed.R.Civ.P. 55(a). This "entry of default" is a prerequisite to entry of a default *judgment* against that party. *In re Catt,* 368 F.3d at 793; *McCarthy v. Fuller,* 2009 WL 3617740 at *1.

Once a default is entered, a plaintiff seeking a default judgment against a defendant must then establish the plaintiff's entitlement to the relief he seeks. *Id*. Except in cases where the plaintiff's claim is for a "sum certain" or an amount that can be "made certain by computation," the plaintiff "must apply to the court for a default judgment." Fed.R.Civ.P. 55(b)(2); *McCarthy v. Fuller,* 2009 WL 3617740 at *1. The court may then hold a hearing or order other action to determine the appropriate amount of damages prior to entry of the default judgment. *Id.*

Although an entry of default does not establish liability *per se,* a defendant is deemed to have admitted the Complaint's well-pleaded facts at to liability. *McCleskey v. Gianino,* 2012 WL 3065558 at *1 (S.D. Ind. July 27, 2012), citing Fed.R.Civ.P. 8(b)(6); *In re Catt,* 368 F.3d at 793; *United States v. Mucci,* 879 F.2d 1488, 1497 (7th Cir. 1989). However, the defendant is not deemed to have admitted the Complaint's factual

allegations regarding damages, and he may fully litigate the issue of damages in that action. *Id.*

### B. Setting Aside a Default

In the Seventh Circuit, it is "well-established policy" to favor a trial on the merits over a default judgment. *Sun v. Board of Trustees of University of Illinois,* 473 F.3d 799, 811 (7th Cir. 2007), *Bristol West Insurance Co. v. Clark,* 2011 WL 1135921 at *2 (S.D. Ind. March 25, 2011); see also *Passarella v. Hilton International Co.,* 810 F.2d 674, 675 (7th Cir. 1987), quoting *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.,* 726 F.2d 1202, 1205 (7th Cir. 1984). A default judgment is considered a "weapon of last resort, appropriate only when a party willfully disregards pending litigation." *Sun v. Board of Trustees,* 473 F.3d at 811.

Rule 55(c) provides that the court may set aside an entry of default "for good cause," and may set aside a default judgment under Rule 60(b) for reasons including "mistake, inadvertence, surprise, or excusable neglect" or "any other reason that justifies relief." Fed.R.Civ.P. 55(c) and 60(b)(1)&(6); *Thomas v. Brinker,* 2012 WL 130408 at *5 (S.D. Ind. Jan. 17, 2012).

A party seeking to set aside an entry of default under Rule 55(c) prior to judgment being entered must show (1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Cracco v. Vitran Express, Inc.,* 559 F.3d 625, 630–31 (7th Cir. 2009); *Richards v. O'Daniel,* 2012 WL 695820 at *2.

Because the Seventh Circuit favors a trial on the merits over default judgment, this test is to be applied quite liberally. *Cracco v. Vitran Express, Inc.,* 559 F.3d at 631 (citing *Sun v. Board of Trustees,* 473 F.3d at 811). As this Court has noted, establishing

"good cause" for purposes of setting aside an entry of default under Rule 55(c) "is not an onerous burden for the defaulted party to satisfy, which is consistent with the general preference for deciding cases on the merits." *McCarthy v. Fuller,* 2009 WL 3617740 at *1.

Whether or not "good cause" exists to set aside a default is within the Court's discretion to determine. *See, e.g., Thomas v. Brinker,* 2012 WL 130408 at *5*; Richards v. O'Daniel*, 2012 WL 695820 at *2 (S.D. Ind. March 1, 2012).

### III. Argument

#### A. *Mr. Di Mizio has Met the Three-part Test for Setting Aside an Entry of Default*

In the present action, the Entry of Default against Mr. Di Mizio should be set aside because he has met the three-part test for such action as recognized by the Seventh Circuit in *Cracco*: (1) "good cause" exists for the default, (2) Mr. Di Mizio took quick action to correct it, and (3) Mr. Di Mizio has a meritorious defense to Plaintiff's amended Complaint and its allegations of copyright infringement.

##### 1. *"Good Cause" Exists for the Default*

A party establishes "good cause" under Rule 55(c) by showing that "it did not willfully ignore the pending litigation, but, rather, failed to respond to the summons and complaint through inadvertence." *Cracco,* 559 F.3d at 631; *Richards v. O'Daniel*, 2012 WL 695820 at *2.

Establishing "good cause" for purposes of Rule 55(c) is not intended to be difficult to demonstrate and it is not synonymous with the "excusable neglect" standard to set aside a default judgment under Rule 60(b)(1). *McCarthy v. Fuller,* 2009 WL 3617740 *3. As the Court of Appeals recognized in *Cracco,* the "good cause" test is

"more liberally applied in the Rule 55(c) context" than if a default judgment had been entered. *Cracco,* 559 F.3d at 631. This is consistent with the Seventh Circuit's "policy of favoring trial on the merits over default judgment." *Id.; McCarthy v. Fuller,* 2009 WL 3617740 *2.

At least one district court, citing this Circuit's decision in *Cracco,* has held that "good cause" to set aside an entry of default is established where the defendant's failure to file a timely answer was due to mistake and a misunderstanding of the default procedure. *See Amsted Industries, Inc. v. Tianrui Group Foundry Co. Ltd.,* 2011 U.S. Dist. LEXIS 113499 at *2–3, 1986 WL 12466 (citing *Cracco*).

In this action, the statements presented in Mr. Di Mizio's accompanying Declaration illustrate that he was by no means "ignoring the pending litigation," and that his failure to timely respond to the Summons and Complaint served on November 2, 2013, was the result of inadvertence and Mr. Di Mizio's misunderstanding of the default procedure.

Although he had yet to be served and had not received, or was not aware of, any documents or correspondence relating to this case, Mr. Di Mizio undertook to investigate and follow the developments in this litigation shortly after learning of the action through a telephone call from Plaintiff's representative, Bill Higgins. (Di Mizio Decl., ¶¶ 7-11, 16). Irrespective of his admittedly mistaken understanding and conclusions regarding the procedural rules applicable to this litigation and the defense of a civil action in federal court, Mr. Di Mizio took it upon himself to seek out information regarding not only this case, but guidance from what he believed were informed sources and materials available online. Mr. Di Mizio also sought out the advice of three attorneys to help him determine

what, if anything, he was required to do in a case in which he had yet to receive paperwork of any kind, to defend himself against claims he knew to be without merit, believed would likely never be tried, and might even be dismissed by the Court without the need for any action by him. (Di Mizio Decl., ¶¶ 11,12, 14, 16).

Even after he received a summons and a copy of an Amended Complaint on November 2, 2012, Mr. Di Mizio continued to believe, mistakenly, that he was not required to respond to Plaintiff's claims at that time, as he had not yet been named, individually, in a separate suit by Malibu, and that this would not be his final opportunity to defend himself in this action, in the event this case was not dismissed by the judge. (Di Mizio Decl., ¶¶ 17-18).

Only after he received a copy of the Clerk's Entry of Default on January 8, 2013, and had spoken with a Court clerk to learn the significance of this "default," did he realize that Plaintiff was pursuing a default judgment against him, and that prompt action was required if he were to have an opportunity to defend himself in this case. (Di Mizio Decl., ¶ 25). Upon that realization, Mr. Di Mizio immediately began contacting attorneys who could assist him in "undoing" this default that he neither expected nor intended to let happen. (Di Mizio Decl., ¶ 26).

Mr. Di Mizio's Declaration provides ample evidence that he did not "willfully ignore the pending litigation, but, rather, failed to respond to the summons and complaint through inadvertence." Under the standard articulated by the Court of Appeals in *Cracco*, Mr. Di Mizio has established that "good cause" exists for his default, and the entry of default against him may be set aside pursuant to Rule 55(c).

### 2. *Quick Action Has Been Taken by Mr. Di Mizio*

The second requirement of the three-part test for setting aside an entry of default is that the defaulted party must take "quick action to correct it." *Cracco,* 559 F.3d at 630-631. As Mr. Di Mizio has stated in his Declaration, upon receiving the Clerk's Entry of Default on January 8, 2013—one day after entry of the default, and the first time he had any notice that Plaintiff was seeking to default him—Mr. Di Mizio "immediately called the Court" inquire about the significance of this entry. (Di Mizio Decl., ¶ 25).

Realizing then that Plaintiff had already taken the first step towards securing a default judgment against him, Mr. Di Mizio "immediately began contacting lawyers in Indianapolis and elsewhere," seeking the assistance of an attorney who could help him "undo" the Entry of Default. (Di Mizio Decl., ¶ 26). Of those he initially contacted, Mr. Di Mizio was either told by the attorney that he could not represent Mr. Di Mizio at that time, or he found that he could not afford to pay the fee required to engage the attorney's services. *Id.*

After identifying and speaking with several attorneys who might assist him in addressing the default that had just been entered against him, Mr. Di Mizio first met with his present counsel on January 14, 2013, just one week after entry of the default. (Di Mizio Decl., ¶ 28). By any measure, as soon as he became aware of the entry of default against him, Mr. Di Mizio took "quick action" to find and engage counsel to represent him in this case, and take action to set aside the Entry of Default.

### 3. *Mr. Di Mizio has a Meritorious Defense to Plaintiff's Claims*

The third requirement to set aside an entry of default is that the defaulted defendant must have a "meritorious defense" to the plaintiff's complaint. *Cracco,* 559

12

F.3d at 630-631. This does *not* mean establishing that the defendant will necessarily—or will even likely—prevail in the action. Rather, a meritorious defense is a defense that "at least raises a serious question regarding the propriety of a default and which is supported by a legal and factual basis." *Jones v. Phipps,* 39 F.3d 158, 165 (7th Cir. 1984), quoted in *Standard Insurance Co. v. Cole,* 2005 WL 4882772 at *3 (S.D. Ind. Aug.19, 2005); *Merrill Lynch Mortgage Corp. v. Narayan,* 908 F.2d 246, 252 (7th Cir. 1990)); *see also Richards v. O'Daniel*, 2012 WL 695820 at *3.

In his Declaration, Mr. Di Mizio categorically denies the allegations of Plaintiff that, by means of a "siterip" and the use of BitTorrent, he "copied and distributed a website containing 16 federally registered copyrighted movies owned by Plaintiff." (Fourth Amended Complaint, ¶ 2 (Docket no.69)). Mr. Di Mizio declares that "I have never downloaded, copied or distributed a website containing movies or videos owned by Plaintiff or any other person. I have never engaged in the actions Plaintiff describes as a 'siterip.'" (Di Mizio Decl., ¶ 29).

Mr. Di Mizio further states that, having reviewing the titles of the sixteen movies Plaintiff alleges were downloaded, copied and/or distributed by him and others, "I am not familiar with any of those titles; I have never, at any time, downloaded, copied or distributed any movies with those titles or websites containing those titles; and I do not have, and to the best of my knowledge have never had, any of those works on my computer at home or otherwise in my possession." (Di Mizio Decl., ¶ 30).

Mr. Di Mizio's denials of Plaintiff's allegations, if determined by the finder of fact in this action to be supported by the evidence, constitutes a refutation of, and a complete defense to, Plaintiff's allegations of copyright infringement with respect to Mr.

Di Mizio. Should Plaintiff's supposed documentation of infringing activity with respect to the subject IP address prove to be legally insufficient or factually inaccurate, or if the evidence presented in this case shows that someone other than Mr. Di Mizio was likely responsible for any unauthorized downloading of Plaintiff's content, Plaintiff's claims against Mr. Di Mizio must fail.

As such, Mr. Di Mizio has a meritorious defense to the claims alleged in Plaintiff's Amended Complaint, and he has satisfied the third and final requirement for setting aside the entry of default against him in this case.

### B. *A Default Judgment Against Mr. Di Mizio Would be Contrary to the Policy of this Circuit and Serve No Legitimate Interest*

As noted above, it is well-established policy in the Seventh Circuit to favor a trial on the merits over a default judgment. (*See supra,* Sec. II.B, p. 8, and cases cited). To allow the Entry of Default with respect to Mr. Di Mizio to stand, and permit Plaintiff to proceed with a motion for a default judgment against him, would neither be in keeping with that policy nor serve any legitimate interest in this case.

Plaintiff originally brought this action against some twenty-three (23) "John Doe" defendants and, at present, some nine (9) named defendants (including Mr. Di Mizio) and twelve (12) "John Does" remain in the case. Of these, only one has filed an Answer to Plaintiff's allegations (Docket no. 56) and several defendants have yet to be served, with Plaintiff presently seeking an extension of time from the Court to permit it to do so. (Docket no. 71). Including Mr. Di Mizio, Plaintiff moved for an entry of dismissal against five (5) of the named defendants on January 4, 2013, and the Clerk entered defaults against four (4) of those defendants three days later. (Docket nos. 64 & 65).

Given that many defendants have yet to be served in this action, and only one has actually answered Plaintiff's complaint, allowing Mr. Di Mizio the opportunity to submit an answer and defend himself against Plaintiff's claims would in no way disrupt the procedural timetable of this action, nor serve any other legitimate interest in this case. Moreover, the entry of default hardly terminates this proceeding as it pertains to Mr. Di Mizio, as he retains his right to contest whatever damages award Plaintiff may pursue at the time it moves the Court for entry of a default judgment against him.

For these reasons, the Court should exercise its discretion and, pursuant to Rule 55(c), order the Entry of Default as it pertains to Mr. Di Mizio to be set aside.

## IV. Conclusion

Mr. Di Mizio has shown the requisite "good cause" for setting aside the Entry of Default against him pursuant to Rule 55(c), and has, through his Declaration, established that he has met all three of the requirements identified in *Cracco* for this Court to do so. Specifically, Mr. Di Mizio has shown that (1) because of his mistaken understanding of court procedure, and not through any willful disregard of this litigation, "good cause" exists for the default; (2) when he learned of the default, Mr. Di Mizio took quick action to correct it; and (3) he has a meritorious defense to the claims of Plaintiff in its amended Complaint. Moreover, allowing the Entry of Default against Mr. Di Mizio to stand would be contrary to the policy of the Seventh Circuit to favor a trial on the merits over a default judgment, and would not serve any legitimate interest in this case.

Accordingly, for good cause shown, the Court should enter an order setting aside the Clerk's Entry of Default (Docket no. 65) with respect to Giancarlo Di Mizio, Jr.; and

Mr. Di Mizio should be permitted a reasonable period of time thereafter to respond to Plaintiff's Complaint, as then amended, on the merits.

Date:   January 27, 2013                         s/ *David S. Klinestiver*   _____
                                                         David S. Klinestiver, Bar No. 11997-22
                                                         LEWIS & KAPPES, P.C.
                                                         One American Square, Suite 2500
                                                         Indianapolis, Indiana  46282
                                                         Tel: (317) 639-1210
                                                         Fax: (317) 639-4882
                                                         dklinestiver@lewis-kappes.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 27, 2013, the foregoing *Memorandum in Support of Motion to Set Aside Clerk's Entry of Default* was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

I further certify that on January 28, 2013, a copy of the foregoing *Memorandum in Support of Motion to Set Aside Clerk's Entry of Default* will be mailed, by first-class U.S. Mail, postage prepaid and properly addressed to the following:

> **HAOJIE WANG**
> 1117 Anthrop Ar. Apt 2
> West Lafayette, IN 47906
>
> **DANIEL WATT**
> 380 Country View Court, Apt. 13
> Martinsville, IN 46151

> s/ *David S. Klinestiver*
> David S. Klinestiver, Bar No. 11997-22
> LEWIS & KAPPES, P.C.
> dklinestiver@lewis-kappes.com