# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | Case No.: 1:12-cv-00841-SEB-MJD |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| TOBY REEVES, HAOJIE WANG, DANIEL | ) | |
| WATT, CAMERON GAFF, GIANCARLO | ) | |
| DI MIZIO JR., SEAN MANGYIK, | ) | |
| KRISTINE EIKENBERG, RAMAKANT | ) | |
| MAMIDIDODDI, LEONARDO ALDANA, | ) | |
| WILLIAM MEEKS SR., and JOHN DOES 2, | ) | |
| 3, 4, 5, 6, 10, 12, 13, 22 and 23, | ) | |
| Defendants | ) | |
| | ) | |

## DEFENDANT DANIEL WATT'S RESPONSE TO PLAINTIFF'S MOTION [CM/ECF 112] TO STRIKE OR SUMMARILY DISMISS DEFENDANT'S AFFIRMATIVE DEFENSES [CM/ECF 101]

**COMES NOW** the Defendant, Daniel Watt, by counsel, and for his Response to Plaintiff's Motion to Strike or Summarily Dismiss Defendant's Affirmative Defenses states as follows:

### Introduction

1. This lawsuit is one of several hundred lawsuits filed by Malibu Media, LLC around the United States over the past several years to profit purely from filing copyright infringement claims and exacting settlements as a business model. As a practice, Malibu Media, LLC sues multiple John Does in the relevant jurisdiction under one cause number, to save money on filing fees, and then whittles down the anonymous Defendant list as individuals settle without ever litigating the claims on the merits.

2. Plaintiff's for-profit business model has been extensively documented in the news media (see for Example, http://www.usnews.com article dated February 02, 2012, "Porn Companies            file            Mass            Piracy            Lawsuits":

DEFENDANT DANIEL WATT'S RESPONSE TO PLAINTIFF'S MOTION TO STRIKE OR SUMMARILY
DISMISS DEFENDANT'S AFFIRMATIVE DEFENSES

http://www.usnews.com/news/articles/2012/02/02/porn-companies-file-mass-piracy-lawsuits-are-you-at-risk; and in a recent U.S. District Court case, these cases were labeled a "nationwide blizzard."   In re Bit Torrent Adult Film Copyright Infringement Cases; 2:11-cv-03995, 12-1147, 12-1150, and 12-1154, Order & Report & Recommendation, CM/ECF #39, dated May 01, 2012 at p.2, United States District Court, Eastern District of New York.

3.      Defendant Daniel Watt never downloaded a pornographic film through the internet or through the BitTorrent network.

4.      Defendant Daniel Watt has no knowledge of any other person or entity using his computer, router, or modem to download a pornographic film.

5.      Defendant Daniel Watt never authorized any other persons, entities, or individuals to use his computer, router, or modem to download a pornographic film.

6.      Malibu Media, LLC relies on questionable forensic evidence such as that from IPP Limited when pursuing Defendants on Internet Protocol addresses alone to justify the expedited discovery used to seek settlements from potential Defendants.

7.      In the State of Indiana, Plaintiff has filed dozens of lawsuits against several hundred Defendants and substantially less against any actual named and served Defendants.  It appears that Defendant Daniel Watt is one of those examples to "encourage the others" into seeking settlements.

8.      This business model is further complicated by the fact that the adult entertainment company's attorney is paid a portion of any settlements received, establishing a potentially champertous relationship that can be easily abused without an incentive for further scrutiny of data provided by the forensics investigators.

9.      To further improve the likelihood that the targets will settle, it is Defendant's belief that Plaintiffs actively draw infringers to their films, and do so by uploading an archive

containing a plurality of films to the internet for unsuspecting potential Defendants to access.  This digital file often contains multiple registered works which Plaintiffs use to seek additional damages from both named and John Doe Defendants.

10. Once the digital file becomes available to be searched and downloaded via Bit Torrent, the investigating company can track IP addresses that may or may not be associated with the Bit Torrent download. The tracking technology used by forensic investigation companies such as IPP Limited is not reliable and has resulted in "false positives" showing infringement by other devices such as a printer, router, or telephone device, which cannot perform the download alleged by plaintiffs.  See e.g., Exhibit A, Piatek, Kohno, and Krishnamurthy, Challenges and Directions for Monitoring P2P Filesharing networks, or Why My Printer Received a DMCA Takedown Notice, http://dmca.cs.washington.edu/dmca_hotsec08.pdf.   The software used by forensic investigation companies cannot necessarily distinguish between IP addresses that are purposely accessing the Bit Torrent tracker to download and distribute the file or people who mistakenly think the file name involves other content which may not necessarily be infringing.  The software used by forensics investigation companies also cannot from Defendant's understanding provide an adequate time stamp to demonstrate that the alleged IP address downloaded an entire work that would constitute an act of copyright infringement for the purposes of this District nor distinguish from a party inadvertently accessing the work and ceasing the activity momentarily afterwards.

11. Upon collecting a sufficient number of IP addresses, a law firm working with the pornography studio and forensic investigator files a Federal lawsuit claiming that multiple individuals, sometimes numbering in the thousands, downloaded the alleged pornographic work.  The Complaint does not name individuals but instead identifies Defendants as "John Does" that are the subscribers to the IP addresses they seek

information on.  Plaintiffs also erroneously claim in the Complaint without basis that the subscriber to the IP address is the actual infringer.  This statement is highly erroneous because it does not consider several common sense factors and relies on a lack of a technical understanding of computer networking to be accepted.

12.     An error rate of at least 30% has been cited for the forensics investigation companies such as IPP Limited.  In a case out of the Southern District of New York, Plaintiff's counsel estimated "that 30% of the names turned over by IPSs are not those of individuals who actually downloaded or shared copyrighted material."  Opinion and Order, Digital Sin, Inc. v. John Does 1-176, 2012 W.L. 263491, 12-cv-00126 (S.D.N.Y. Jan. 30, 2012) at p. 5.  Even more concerning is the fact that the Plaintiffs are willing to rely on dubious information when attempting to encourage Defendants to settle the action without a review of the strength of the individual claim.

13.     A prosecutor bringing similar actions for access to obscenity or child pornography in the context of federal criminal prosecution using forensics investigation techniques with a 30% or above error rate would likely be brought up on charges of criminally actionable prosecutorial misconduct and/or abuse of process.  Moreover, no civil litigator would file lawsuits with an error rate of 30% without having to consider the consequences under Federal Rules of Civil Procedure Rule 11 and 28 U.S.C. 1927.

14.     The pornographic film company acting as Plaintiff represents to the Courts in their Complaints that the Defendants are all liable for the downloading in question; that the acts of infringement occurred using only the Defendant's IP addresses, and that the ISP can accurately correlate the IP address to the Defendant's true identity (rather than a subscriber).  The Plaintiff film company makes these claims in spite of knowledge that the actual identity, conduct, and intent of any of the alleged Defendants are unknown to the Plaintiffs.

15. Moreover, the statements are made to the Court despite knowledge that the IP addresses being represented do not always represent the proper person or Defendant accused of infringing activity. IP addresses may be assigned or attached to many other devices capable of operation through a router or modem. Several federal courts have affirmed this idea. See, e.g., In re Bit Torrent Adult Film, supra, 2:11-cv-03995, May 1, 2012, at p. 6; Malibu Media LLC v. John Does 1-10, 2:12-cv-3623, Order, June 27, 2012.

16. Plaintiff's statements are made to the Court without consideration of the various factors that could be exculpatory to a particular subscriber or alleged Defendant. Plaintiffs in these actions have the knowledge that the alleged act of infringement could have been performed by a third-party with a different computer connected to the IP address without the subscriber's knowledge or consent. With the proliferation of wireless networks and consumer wireless networking technology, the alleged infringing activity could be performed by any person with a computer within a wireless network's range, a fact that Plaintiffs are well aware of. The activity could also have been performed remotely by a hacker who has gained access to the subscriber's computer or even an individual spoofing an IP address. These mitigating factors are not accounted for by the International IP tracker software used by Plaintiff in the present action or any of the forensic investigation companies such as IPP Limited.

17. Several prominent cases in multiple districts have directly addressed these shortcomings. In the Eastern District of New York, in a consolidation of civil actions 11-3995, 12-1147, 12-1150, and 12-1154, two of which included Malibu Media as Plaintiff, Gary R. Brown, US Magistrate Judge, stated that it "is no more likely that the subscriber to an IP address carried out a particular computer function — here the purported illegal downloading of a single pornographic film — than to say an individual who pays the telephone bill made a specific telephone call." The Magistrate further stated that "[M]ost, if not all, of the IP

addresses will actually reflect a wireless router or other networking device, meaning that while the ISPs will provide the name of its subscriber, the alleged infringer could be the subscriber, a member of his or her family, an employee, invitee, neighbor or interloper." See In re Bit Torrent Adult Film Copyright Infringement Cases; 2:11-cv-03995, 12-1147, 12-1150, and 12-1154, Order & Report & Recommendation, CM/ECF #39, dated May 01, 2012 at p.6, United States District Court, Eastern District of New York.

18.    In a similar case in the Central District of California, District Judge Otis D. Wright, II stated that "Other than invoking undocumented statistics, Plaintiff provides nothing to indicate that [Defendant] is the infringer."  Judge Wright further states that "Plaintiff's 'factual analysis' cannot be characterized as anything more than a hunch" and that "Plaintiff acted recklessly by naming [Defendant] as the infringer based on its haphazard and incomplete investigation."

19.    Although Malibu has extracted many settlements as a serial litigant in this district and throughout the country, Malibu does not own the right to sue for many of the works the Amended Complaint claims were infringed.  In fact, Malibu may have lacked standing to file the initial complaint – from where it gathered all of the early discovery in this case. Set forth in more detail below, many of the Works complained of were created before Malibu Media even existed and the change of title is incomplete.  Malibu does not have an assignment allowing it to sue for past infringement, which it concealed from both the Court, the Defendants, and those parties with whom Malibu settled.

20.    Malibu has filed this action based upon alleged infringement of 16 different "works" combined into a single torrent file.  The works and dates of publication are as follows:

| | |
|---|---|
| Carlie Beautiful Blowjob | 2010-03-26 |
| Carlie Big Toy Orgasm | 2010-03-22 |
| Carlie Leila Strawberries and Wine | 2010-05-07 |
| Daddy's Office | 2010-11-12 |
| Jennifer Naughty Angel | 2010-11-05 |
| Just the Two of Us | 2011-11-18 |
| Kat Translucence | 2009-11-20 |
| Katka Cum Like Crazy | 2010-07-07 |

DEFENDANT DANIEL WATT'S RESPONSE TO PLAINTIFF'S MOTION TO STRIKE OR SUMMARILY DISMISS DEFENDANT'S AFFIRMATIVE DEFENSES

| | |
|---|---|
| Katka Sweet Surprise | 2010-08-04 |
| Kristen Girl Next Door | 2010-08-25 |
| Leila Sex on the Beach | 2010-12-22 |
| Megan Morning Bath | 2010-02-12 |
| Mina's Fantasy | 2010-06-25 |
| The Girl in My Shower | 2009-10-23 |
| Tiffany Teenagers in Love | 2010-12-29 |
| Tori the Endless Orgasm | 2010-10-20 |

21. All but one of these works, "Just the Two of Us," shows a publication date which precedes the formation of Plaintiff Malibu Media, which was not formed as an LLC until February 8, 2011, yet Malibu is listed on each and every copyright as the Author and Employer for Hire.

## **Defendant's First Affirmative Defense**

22. Despite Plaintiff's unsupported contentions to the contrary, in light of relevant precedent, and pursuant to the facts stated above, Plaintiff has failed to state a claim for which relief can be granted.

23. Plaintiff has not pled a prima facie case of copyright infringement, regardless of the number of times it wrongly asserts that it has.

24. Plaintiff has failed to prove the second element required to establish copyright infringement, namely "copying of constituent elements of the work that are original" by Defendant.

25. Therefore, Defendant's First Affirmative Defense should not be stricken or summarily dismissed.

## **Defendant's Third Affirmative Defense**

26. Plaintiff again purports to strike down a defense based upon its own unsupported assertions that its "works" are original.

27. Defendant claims his Third Affirmative Defense on the basis that the "works" in question do not exhibit the necessary "creative spark" to be considered original works.

28. Until further discovery is carried out, Defendant has no way to know if Plaintiff has simply renamed works produced by someone else, especially given the fact that 15 out of the 16 works were produced "for hire" prior to Plaintiff's existence, in which case such works could not plausibly be considered original.

29. Therefore, Defendant's Third Affirmative Defense should not be stricken or summarily dismissed.

**Defendant's Fourth Affirmative Defense**

30. Defendant's Fourth Affirmative Defense of Invalid/Unenforceable Copyrights is less conclusive than the entire basis for Plaintiff's Complaint in this matter.

31. Plaintiff's "works" do not promote the progress of science, do not promote the useful arts, presumably depict obscene material, and as such are not entitled to copyright protection.

32. There is legitimate question as to whether Plaintiff even has proper standing to pursue past infringement claims for works which it does not own such right, given that the Plaintiff claims to be the author of all the works as employer for hire despite the fact that all but one of the 16 works were created prior to Plaintiff's existence.

33. Therefore, Defendant's Fourth Affirmative Defense should not be stricken or summarily dismissed.

**Defendant's Fifth Affirmative Defense**

34. Defendant's Fifth Affirmative Defense of equitable remedies being barred is valid in light of the fact that Plaintiff has failed to plead a prima facie case of infringement.

35. Because Plaintiff has failed to show that Defendant infringed any valid copyright held by Plaintiff, equitable relief should be barred.

36. Therefore, Defendant's Fifth Affirmative Defense should not be stricken or summarily dismissed.

## Defendant's Seventh Affirmative Defense

37.    Defendant's Seventh Affirmative Defense of No Damages should stand, as Plaintiff has failed to plead a prima facie case, and thus no irreparable harm can be presumed or inferred.

38.    Despite claims to the contrary in Plaintiff's motion, Defendant may argue, following further discovery, that Plaintiff's business depends not on subscriptions to its website, but instead on settlement amounts obtained through its copyright trolling and abuse of the legal system in cases such as this.

39.    Defendant contends that further discovery may also show that Plaintiff has already recovered the statutory maximum in settlement payments for alleged infringement of the "works" in question pursuant to its "swarm" theory, and thus is not entitled to further damages.

40.    Therefore, Defendant's Seventh Affirmative Defense should not be stricken or summarily dismissed.

## Defendant's Eighth Affirmative Defense

41.    Defendants Eighth Affirmative Defense should be upheld for the same reasons as its Fifth Affirmative Defense.

42.    Plaintiff has not only failed to adequately plead infringement by Defendant, but has made no showing of continuing infringement or irreparable harm.

43.    Therefore, Defendant's Eighth Affirmative Defense should not be stricken or summarily dismissed.

## Defendant's Ninth Affirmative Defense

44.    Defendant's Ninth Affirmative Defense of Failure to Mitigate should be allowed, as Plaintiff has made no showing that is ever issued a Takedown Notice pursuant to the

Digital Millennium Copyright Act (DMCA), nor did it take any other steps to prevent downloading of its "works" via BitTorrent.

45.   Upon further discovery, Defendant believes that Plaintiff may have actually "seeded" its works via BitTorrent itself or through a third party in order to encourage downloading and further its business model.

46.   Therefore, Defendant's Ninth Affirmative Defense should not be stricken or summarily dismissed.

## Defendant's Tenth Affirmative Defense

47.   Defendant's Tenth Affirmative Defense is valid and should be allowed, as Plaintiff has misconstrued the law.

48.   Plaintiff attempts to avoid duplicative claims through semantics, and relies on the fact that it never wants to actually have to litigate its claims in order to characterize its profit as an "award."

49.   Plaintiff's claims, absent settlement, necessarily presume that a trial will eventually take place, thus limiting its statutory damages under its own "swarm" theory.

50.   Therefore, Defendant's Tenth Affirmative Defense should not be stricken or summarily dismissed.

## Defendant's Twelfth Affirmative Defense

51.   Defendant does not oppose the striking of his Twelfth Affirmative Defense, but reserves the right to file an amended pleading reasserting one or more affirmative defenses based on the development of the facts.

52.   In ruling on Plaintiff's motion, Defendant requests that the court expressly acknowledge that the striking of affirmative defenses be *without prejudice* for Defendant to move for leave to reassert the defenses.  While discovery has not yet opened in the present case, publicly available information about Plaintiff reveals that its claims are highly suspect.

Plaintiff has filed more than 400 lawsuits against over 6,000 defendants.  It claims to be the "author" of pornographic movies made prior to 2011, even though Plaintiff was not formed until February 8, 2011 according to the California Secretary of State.  In addition, it appears that Plaintiff's "business" is to put, or have put, its own pornographic movies on the Internet, and then to monitor the Internet for IP addresses to see who accesses those files.  Under these circumstances, many affirmative defenses are available to the Defendant.

### Defendant's Thirteenth Affirmative Defense

53.   Defendant's Thirteenth Affirmative Defense of Estoppel should be sustained, as Plaintiff has failed to plead a prima facie case of infringement against Defendant, and is proceeding in spite of substantial negative precedent in several jurisdictions.

54.   Plaintiff's continued pursuit of its frivolous claim is unwarranted and intended merely to cost defendants money through preparing a defense or offering an undeserved settlement to Plaintiff to go away, and as such should be estopped.

55.   Plaintiff's alternative argument regarding responsive pleadings is irrelevant in this case, as the case cited refers to a plaintiff's complaint to which a response is required, and not to a defendant's affirmative defenses, to which no direct response is required.

56.   Therefore, Defendant's Thirteenth Affirmative Defense should not be stricken or summarily dismissed.

### Defendant's Fourteenth Affirmative Defense

57.   Defendant does not oppose the striking of his Fourteenth Affirmative Defense, but reserves the right to file an amended pleading reasserting one or more affirmative defenses based on the development of the facts.

58.   In ruling on Plaintiff's motion, Defendant requests that the court expressly acknowledge that the striking of affirmative defenses be *without prejudice* for Defendant to move for

leave to reassert the defenses.  While discovery has not yet opened in the present case, publicly available information about Plaintiff reveals that its claims are highly suspect. Plaintiff has filed more than 400 lawsuits against over 6,000 defendants.  It claims to be the "author" of pornographic movies made prior to 2011, even though Plaintiff was not formed until February 8, 2011 according to the California Secretary of State.  In addition, it appears that Plaintiff's "business" is to put, or have put, its own pornographic movies on the Internet, and then to monitor the Internet for IP addresses to see who accesses those files.  Under these circumstances, many affirmative defenses are available to the Defendant.

## Defendant's Fifteenth Affirmative Defense

59.   Defendant's Fifteenth Affirmative Defense should not be stricken, as Plaintiff is operating a large-scale settlement generation scheme, using the court as its agent, and the subject matter of its "works" as embarrassment and incentive.

60.   Plaintiff has been made aware of the shortcomings of its legal arguments and theories in various cases in multiple jurisdictions, yet it continues to operate its copyright trolling business model.

61.   Defendant will show, should this matter progress through discovery and to trial, that Plaintiff is perpetrating fraud upon the Court and the defendants in these cases by continuing to make warrantless claims contrary to law and precedent in an effort to extract undeserved settlement funds from defendants..

62.   Therefore, Defendant's Fifteenth Affirmative Defense should not be stricken or summarily dismissed.

## Defendant's Sixteenth Affirmative Defense

63.   Defendant has demonstrated in this pleading through a multitude of examples how Plaintiff's actions are unconscionable and an abuse of process.

64.    Shortly and plainly, Plaintiff is operating under a business model which seeks to use the courts as its agent in extorting settlements out of defendants by paying a single filing fee to pursue numerous Doe Defendants, accusing them of downloading embarrassing subject matter to which Plaintiff's copyright claims are suspect at best, with no direct proof of actual infringement by particular Defendants.

65.    Therefore, Defendant's Sixteenth Affirmative Defense should not be stricken or summarily dismissed.

### Defendant's Seventeenth Affirmative Defense

66.    Defendant's Seventeenth Affirmative Defense of Unclean Hands is supported by the evidence, and will be further bolstered should discovery take place.

67.    Plaintiff's misconduct is intentional in pursuing frivolous cases against multiple defendants in multiple jurisdictions regarding "works" which Defendant believes Plaintiff submitted as BitTorrent files either itself or through a third party to encourage infringement.

68.    Plaintiff's wrongdoing concerns Defendant, as he has been wrongfully forced to defend himself against allegations which are neither provable nor true.

69.    Defendant has been injured by Plaintiff's conduct, as he has been forced to hire counsel to defend against these unsupported and embarrassing allegations.

70.    Therefore, Defendant's Seventeenth Affirmative Defense should not be stricken or summarily dismissed.

**WHEREFORE**, Defendant prays and respectfully requests that:

a.    Plaintiff's Complaint be dismissed with prejudice and judgment be entered on behalf of Defendant;

b.    Judgment be entered in favor of Defendant declaring that Defendants is not now infringing and has not in the past infringed Plaintiff's alleged copyrighted works;

c.  An award be entered in favor of Defendant for reasonable attorneys' fees pursuant
    to 17 U.S.C. §505 and costs incurred in this civil action; and

d.  Any and all other further relief in favor of Defendant as this Court deems just or
    proper be granted.

Respectfully Submitted this 18th day of April, 2012
BRANNON SOWERS & CRACRAFT PC

By: _____s/  William K. Doss_____.
William K. Doss   20097-29
1 North Pennsylvania Street, Suite 800
Indianapolis, IN 46204
(317) 721-3677 Telephone
(317) 630-2813 Facsimile
wdoss@bscattorneys.com
Attorney for Defendant
Daniel Watt

DEFENDANT DANIEL WATT'S RESPONSE TO PLAINTIFF'S MOTION TO STRIKE OR SUMMARILY
DISMISS DEFENDANT'S AFFIRMATIVE DEFENSES

## Certificate of Service

**I HEREBY CERTIFY** that on April 18, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.  Service of this filing will be made on all ECF-registered counsel through the Court's electronic filing system.

BRANNON SOWERS & CRACRAFT PC

By: _____s/  William K. Doss_____.
William K. Doss   20097-29
1 North Pennsylvania Street, Suite 800
Indianapolis, IN 46204
(317) 721-3677 Telephone
(317) 630-2813 Facsimile
wdoss@bscattorneys.com
Attorney for Defendant
Daniel Watt

DEFENDANT DANIEL WATT'S RESPONSE TO PLAINTIFF'S MOTION TO STRIKE OR SUMMARILY
DISMISS DEFENDANT'S AFFIRMATIVE DEFENSES